**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carly Denial,<br><br>    Plaintiff,<br><br>v.<br><br>City of Flagstaff, et al.,<br><br>    Defendants. | No. CV-18-08067-PCT-DWL<br><br>**ORDER** |

Defendants City of Flagstaff and Melanie Montano have moved for judgment on the pleadings pursuant to Rule 12(c). (Doc. 14.) At the request of the Court (Doc. 46), the parties provided supplemental briefing regarding whether Defendants are entitled to qualified immunity on the § 1983 claim, and if so, how to resolve the remaining state-law claims. (Docs. 51, 52.) For the reasons below, the Court will grant Defendants' motion with regard to the § 1983 claim, will decline to exercise supplemental jurisdiction over the remaining state-law claims, and thus will remand those claims to the Coconino County Superior Court.

**BACKGROUND**

Defendant City of Flagstaff is a municipal corporation organized under the laws of the State of Arizona. (Doc. 1-1 at Ex. A ¶ 2.) Defendant Melanie Montano ("Officer Montano") was employed by the City of Flagstaff as a police officer during all times relevant to the complaint. (*Id.* ¶ 3.) Plaintiff Carly Denial was a resident of the City of

Flagstaff during all times relevant to the complaint. (*Id.* ¶ 1.) The relevant facts as alleged by Plaintiff are as follows.

On February 6, 2017, Officer Montano responded to an alleged shoplifting incident at Sportsman's Warehouse in Flagstaff. (*Id.* ¶¶ 8-9.) Sportsman's Warehouse advised Officer Montano that two individuals had stolen merchandise totaling nearly $800. (*Id.* ¶ 9.) Officer Montano arrested both individuals: Josh Kieffer and Plaintiff's sister, Nicole Renee Denial ("Nicole"). (*Id.* ¶¶ 8, 13.)

Officer Montano identified Josh Kieffer using documentary evidence issued by the State of Arizona. (*Id.* ¶10.) However, Nicole was unable to produce any evidence of her identity. (*Id.* ¶ 11.) Nicole falsely identified herself as Plaintiff, Carly Denial. (*Id.* ¶¶ 12, 13.) Officer Montano accepted Nicole's representation that she was Plaintiff based solely upon her verbal statement of identity. (*Id.* ¶ 11.) Officer Montano did not request any documentation from Nicole regarding her identity, even after Officer Montano accompanied Nicole to her residence. (*Id.* ¶ 14.)

After reading Nicole her *Miranda* rights, Officer Montano ran a search to determine whether there were any other arrests or outstanding warrants for "Carly Denial." (*Id.* ¶ 15.) Finding none, Officer Montano issued a citation to Nicole, which included Plaintiff's social security and driver's license numbers. (*Id.* ¶ 16.) Officer Montano then released Nicole after she signed the citation issued in Plaintiff Carly Denial's name, promising that she would appear in court. (*Id.* ¶¶ 16-17.)

On May 11, 2017, the Arizona Department of Public Safety pulled over Plaintiff on Interstate Highway 17 for a traffic violation. (*Id.* ¶ 21.) The officer discovered that an outstanding arrest warrant had been issued for Plaintiff for her failure to appear in court relating to the incident at Sportsman's Warehouse. (*Id.*) The officer placed Plaintiff under arrest and took her to the Fourth Avenue Jail. (*Id.* ¶ 22.) Plaintiff was released the next day, having spent approximately twelve hours in the jail's custody. (*Id.*)

On November 1, 2017, Plaintiff filed a notice of claim with the City of Flagstaff and Officer Montano. (Doc. 14-1 at Ex. 3; Doc. 1-1 at Ex. A ¶ 30.)

On February 12, 2018, Plaintiff filed suit in the Coconino County Superior Court. (Doc. 1-1 at Ex. A.) The complaint alleges four counts: (1) gross negligence; (2) a violation of 42 U.S.C. § 1983; (3) intentional infliction of emotional distress; and (4) instigating or participating in unlawful arrest. (*Id.*)

On March 23, 2018, Defendants removed this action to federal court. (Doc. 1.)

On April 3, 2018, Defendants filed their answer. (Doc. 7.) It alleges several affirmative defenses, including qualified immunity. (Doc. 7 at 8.)

On May 7, 2018, Defendants filed a motion for judgment on the pleadings on all four counts. (Doc. 14.)

On November 16, 2018, the Court ordered the parties to submit supplemental briefing on two issues: (1) whether the § 1983 claim should be dismissed with prejudice because Defendants are entitled to qualified immunity; and (2) whether, in the event of a dismissal of the § 1983 claim, the remaining state-law claims should be dismissed without prejudice under 28 U.S.C. § 1367(c)(3). (Doc. 46.)

On December 7, 2018, both parties submitted their supplemental briefing. (Docs. 51, 52.)

**LEGAL STANDARD**

A motion for judgment on the pleadings under Rule 12(c) is "functionally identical" to a Rule 12(b)(6) motion to dismiss. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (citations omitted). *See also Harris v. Cty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (citation omitted) ("*Iqbal* applies to Rule 12(c) motions"). Therefore, a motion for judgment on the pleadings "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. Cty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999); *see also Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 955 (9th Cir. 2004) (when ruling on a Rule 12(c) motion, the court must "accept as true all allegations in [the plaintiff's] complaint and treat as false those allegations in the answer that contradict [the plaintiff's] allegations").

**ANALYSIS**

A. <u>The § 1983 Claim</u>

    **1.    The Parties' Arguments**

Count Two of the complaint alleges that Officer Montano, acting under color of law, "caused [Plaintiff] to be deprived of her constitutional rights," namely "the right to due process, the right to liberty, and the right to privacy of her own body." (Doc. 1-1 at Ex. A ¶¶ 32, 33.)[1]

In their initial moving papers, Defendants asked the Court to find, as a matter of law, that the conduct alleged in the complaint does not amount to a constitutional violation. (Doc. 14 at 4-8.) Among other things, they argued that (1) the deprivation of liberty suffered by Plaintiff (*i.e.,* a 12-hour detention) was of insufficient duration and severity to constitute a due process violation, (2) due process claims premised on an "incorrect arrest" cannot succeed if the arrest was made pursuant to a valid warrant based on probable cause, (3) due process claims against investigating officers require allegations of "bad faith" or the deliberate falsification of evidence, and (4) courts have specifically held that a state actor's failure to follow internal policies and procedures does not constitute a due process violation. *Id.* In her response, Plaintiff argued that (1) the 12-hour detention constituted a deprivation of her liberty because "[a]ny restraint, however slight, upon another person's liberty to come and go as one pleases, constitutes an arrest," and the deprivation of liberty was unaccompanied by due process because Officer Montano failed to obtain satisfactory evidence of identity before issuing a citation in Plaintiff's name, and (2) the Ninth Circuit's decision in *Fargo v. San Juan Bautista*, 857 F.2d 638 (9th Cir. 1988), establishes that gross negligence (as opposed to bad faith or intentional falsification) is sufficient to state a clam under § 1983. (Doc. 23 at 4-6.)

In its November 16, 2018 order, the Court noted that Defendants had raised the affirmative defense of qualified immunity in their answer, observed that courts should

---

[1] Plaintiff also alleges that Defendant City of Flagstaff is vicariously liable because Officer Montano's acts and omissions occurred "within the course and scope of her employment." (Doc. 1-1 at Ex. A ¶ 34.)

avoid resolving constitutional questions unless required to do so, and thus ordered "the parties to provide supplemental briefing on whether Defendants are entitled to qualified immunity." (Doc. 46 at 4-5.)

Notably, in her supplemental brief, Plaintiff conceded that "Defendants are likely to prevail on any argument that they are entitled to qualified immunity" and thus requested that her § 1983 claim be dismissed. (Doc. 51 at 1-3.) Defendants, meanwhile, argued they are entitled to qualified immunity because "Arizona law does not mandate the collection of personal identification information in this situation," "there is no Ninth Circuit precedent that put Officer Montano on notice that not verifying a suspect's identity when the suspect matched the physical description of the misidentified person violated clearly established law," and "[t]he case law at the time of the incident would have put Officer Montano on notice that failing to follow an internal policy, alone, does not rise to the level of a constitutional violation." (Doc. 52 at 4-6.)

### 2. Qualified Immunity

Qualified immunity is "'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). It should, thus, should be resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Although the Supreme Court has recognized it "is often beneficial" to address first whether a statutory or constitutional right has been violated, *Pearson*, 555 U.S. at 236, district courts are nevertheless vested with discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* For instance, where it is "far from obvious whether in fact there is . . . a [statutory or constitutional] right," and deciding whether a right exists may result "in a substantial expenditure of scarce judicial resources," the court may begin by considering

the clearly-established prong. *Id.*

Whether Plaintiff has pleaded a constitutional violation in this case—and thus may avoid dismissal under the first prong of the qualified-immunity test—is not obvious. In her initial response to the Rule 12(c) motion, Plaintiff argued her allegations were sufficient because (1) they showed that Officer Montano had engaged in "gross negligence" and (2) the Ninth Circuit's decision in *Fargo v. San Juan Bautista*, 857 F.2d 638 (9th Cir. 1988), establishes that gross negligence (as opposed to bad faith or intentional falsification) is sufficient to state a clam under § 1983. (Doc. 23 at 4-6.) This argument is unavailing. Although the precise mental state that is required to state a § 1983 claim against a police officer in this context is difficult to synthesize from the Supreme Court's and the Ninth Circuit's opinions over the last 30 years, the one thing those decisions do make clear is that *Fargo*'s broad "gross negligence is enough" pronouncement from 1988 is no longer good law. In 1996, the Ninth Circuit specifically held that "*Fargo* [is] no longer good law to the extent that [it] set[s] a standard of gross negligence for § 1983 violations." *Lewis v. Sacramento Cty.*, 98 F.3d 434, 440 (9th Cir. 1996). Next, the Supreme Court granted certiorari and held (somewhat cryptically) that it "is a matter for closer calls" whether a constitutional violation can be alleged when an injury is caused by "something more than negligence but less than intentional conduct, such as recklessness or gross negligence." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (internal quotation marks and citation omitted). Finally, over the last two decades, the Ninth Circuit has issued a series of decisions suggesting that gross negligence is generally not enough to state a § 1983 claim. *See, e.g., Tatum v. Moody*, 768 F.3d 806, 821 (9th Cir. 2014) ("In the context of a § 1983 suit against police officers for a due process violation, official conduct violates due process only when [it] 'shocks the conscience,' a standard satisfied in circumstances such as these by conduct that either consciously or through complete indifference disregards the risk of an unjustified deprivation of liberty."); *Brown v. Holder*, 763 F.3d 1141, 1150 n.5 (9th Cir. 2014) ("We have avoided using . . . 'elusive terms' such as gross negligence or recklessness, although we believe that Brown must show a greater level of culpability than

these terms ordinarily suggest in order to prove a constitutional violation"."); *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2001) ("[T]he standard we apply is even higher than gross negligence—deliberate indifference requires a culpable mental state."). *See also Pauluk v. Savage*, 836 F.3d 1117, 1127 (9th Cir. 2016) (Murguia, J., concurring) (citations omitted) ("[T]he government does not violate the Constitution 'whenever someone cloaked with state authority causes harm.' The substantive component of the Due Process Clause only prevents the state from engaging in conduct 'intended to injure in some way unjustifiable by any government interest. '[O]nly the most egregious official conduct' crosses the constitutional line so as to constitute a deprivation of due process. To this end, we have made clear that gross negligence on the part of the government actor is not enough.").

In short, the law in this area is not a model of clarity. For that reason, the Court will decline to resolve the first question posed by the qualified-immunity test (*i.e.,* whether the conduct alleged in the complaint amounts to a constitutional violation) and will instead turn to the second question (*i.e.,* whether the alleged right was clearly established). *Sjurset v. Button*, 810 F.3d 609, 615 (9th Cir. 2015) ("If indeed the [Defendants] did not violate clearly established law, then we can determine that qualified immunity is appropriate and may thus dispose of the case without undertaking an analysis of whether a constitutional violation occurred in the first instance.").

As Plaintiff seems to concede in her supplemental brief, the right was not clearly established. A government official's conduct violates "clearly established" law when "'[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 741 (citation omitted). Although there need not be a "case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Here, Plaintiff has not identified any cases establishing that a police officer violates the Constitution, let alone a "clearly established" constitutional right, by issuing a citation to an arrestee without obtaining satisfactory evidence of the arrestee's true identity.

Moreover, the Court has identified at least one case concluding that such conduct does not violate a constitutional right that is "clearly established."

In *Collins v. City of Peoria*, 2011 WL 777880 (C.D. Ill. 2011), an unknown driver didn't produce any identification following a routine traffic stop and falsely told the police officer that his name was "Tommy Collins." *Id.* at *1. Using this information, the officer discovered that Tommy Collins's driver's license was suspended and issued a ticket in the name of Tommy Collins, along with a date for traffic court. *Id.* When the driver failed to attend traffic court, an arrest warrant was issued for Tommy Collins. *Id.* The real Tommy Collins was subsequently arrested pursuant to the warrant and jailed for six days. *Id.* After being released, Collins filed a § 1983 action against the police officer. *Id.* The district court dismissed, finding the officer was entitled to qualified immunity. The court explained that it "cannot find any precedent as to whether or not an officer has a constitutional duty to protect innocent persons from being arrested by engaging in a prolonged investigation into the identity of an unknown offender who is being charged with a traffic violation." *Id.* at *2. Accordingly, the court concluded there was no clearly established constitutional right of which the officer should have been aware. *Id.* at *3.

This Court reaches the same conclusion. Officer Montano did not violate Plaintiff's "clearly established" constitutional rights when she issued a citation in the name of "Carly Denial" without first having obtained documentary evidence of the arrestee's identity. Existing precedent has not placed the constitutional question "beyond debate." *al-Kidd*, 563 U.S. at 741.

Because the Court has determined (and Plaintiff now apparently concedes) that Officer Montano did not violate a "clearly established" right, the Court grants Defendants' motion for judgment on the pleadings as to the § 1983 claim.

B. <u>State-Law Claims</u>

Remaining are Plaintiff's state-law claims. Defendants ask "the Court to exercise its discretion and rule on the state-law claims. . . . Because these issues have been fully briefed, Defendants respectfully ask this Court [to] grant its Motion for Judgment on the

Pleadings, in its entirety, rather than return this matter to state court to decide the pending motion." (Doc. 52 at 6-7.) Plaintiff asks the Court to remand the state-law claims to state court. (Doc. 51 at 2-3.)

In most instances, when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988). *See also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [pendent state-law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction."). Here, these factors generally weigh against retaining jurisdiction over the state-law claims.

First, because the case is only approximately ten months old and no trial date has been set, there will be minimal duplication of effort caused by a remand. Additionally, Plaintiff initially filed this case in state court—it only came to federal court because Defendants removed it. Second, all parties reside in Coconino County, making that court a convenient forum. (Doc. 51 at 2-3; Doc. 1-1 at Ex. A ¶¶ 1-3.) Third, and most important, all state-law claims potentially could be resolved by finding Plaintiff's notice of claim deficient. Considerations of federalism, comity, and fairness are thus best served by allowing the Arizona state courts to address the parties' conflicting interpretations of Arizona's notice-of-claim statute. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

Accordingly,

**IT IS ORDERED** that the motion for judgment on the pleadings (Doc. 14) is **GRANTED** in part as to the § 1983 claim.

**IT IS FURTHER ORDERED** that the Court remands the state-law claims—counts 1, 3, and 4—to the Coconino County Superior Court.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment for Defendants on Count 2, remand the remaining counts to the Coconino County Superior Court, and then terminate this action in this Court.

Dated this 13th day of December, 2018.

_____
Dominic W. Lanza
United States District Judge